# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **CHRISTA POOLE,** }<br>}<br>**Plaintiff,** }<br>}<br>v. }<br>}<br>**NANCY BERRYHILL,** }<br>**Acting Commissioner of the** }<br>**Social Security Administration,** }<br>}<br>**Defendant.** } | Case No.: 4:16-CV-01532-MHH |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. § 405(g), plaintiff Christa Poole seeks judicial review of a final adverse decision of the Commissioner of Social Security. The Commissioner denied Ms. Poole's claim for a period of disability and disability insurance. After careful review, the Court affirms the Commissioner's decision.[1]

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. (*See* https://www.ssa.gov/agency/commissioner.html). Therefore, the Court asks the Clerk to please substitute Ms. Berryhill for Carolyn W. Colvin as the defendant in this action. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. Later opinions should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded.").

## I. PROCEDURAL HISTORY

Ms. Poole applied for a period of disability and disability insurance benefits on July 26, 2013. (Doc. 6-4, p. 2). Ms. Poole alleges that her disability began December 8, 2008. (Doc. 6-4, p. 2). The Commissioner initially denied Ms. Poole's claim on October 30, 2013. (Doc. 6-5. pp. 2-8). Ms. Poole requested a hearing before an Administrative Law Judge (ALJ). (Doc. 6-5, p. 13). The ALJ issued an unfavorable decision on April 30, 2015. (Doc. 6-3, pp. 10-22). On July 22, 2016, the Appeals Council declined Ms. Poole's request for review (Doc. 6-3, p. 2), making the Commissioner's decision final and a proper candidate for this Court's judicial review. *See* 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's factual findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d

1155, 1158 (11th Cir. 2004). In evaluating the administrative record, the Court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted). If substantial evidence supports the ALJ's factual findings, then the Court "must affirm even if the evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision unless the error is harmless. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III.   SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that she is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past

relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178. For purposes of evaluating Ms. Poole's request for a period of disability and disability insurance benefits, the ALJ noted that Ms. Poole had sufficient coverage to remain insured through December 31, 2013, so Ms. Poole had to establish disability on or before December 31, 2013 to be entitled to a period of disability and disability insurance benefits. (Doc. 6-3, p. 13); *see also Moncrief v. Astrue*, 300 Fed. Appx. 879, 880 n.1 (11th Cir. 2008) ("Unlike SSI, which has no insured status requirement, a claimant must demonstrate disability on or before the last date on which she was insured in order to be eligible for DIB.").

In this case, the ALJ found that Ms. Poole has not engaged in substantial gainful activity from December 8, 2008, the alleged onset date, through December 31, 2013, her date last insured. (Doc. 6-3, p. 15). The ALJ determined that Ms. Poole suffers from the following severe impairments: diabetes mellitus, hypertension, neuropathy, obesity, and major depression, recurrent, moderate, with anxiety. (Doc. 6-3, p. 15). Based on a review of the medical evidence, the ALJ concluded that Ms. Poole does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 6-3, p. 15).

In light of Ms. Poole's impairments, the ALJ evaluated Ms. Poole's residual functional capacity or RFC. The ALJ determined that Ms. Poole has the RFC to perform:

> sedentary work as defined in 20 CFR 404.1567(a), with respect to sitting, standing, walking, lifting and carrying; work that is simple and routine in nature; is able to maintain attention and concentration for two hours with customary rest breaks; and can work with things rather than data or people.

(Doc. 6-3, p. 17).

Based on this RFC, the ALJ concluded that Ms. Poole is not able to perform her past relevant work as a certified nurse assistant and cashier. (Doc. 6-3, p. 20). Relying on testimony from a vocational expert, the ALJ found that jobs exist in the national economy that Ms. Poole can perform, including inspector and sorter, production table worker, and machine operator and feeder. (Doc. 6-3, pp. 20-21). Accordingly, the ALJ determined that Ms. Poole has not been under a disability from December 8, 2008, the alleged onset date, through December 31, 2013, her date last insured. (Doc. 7-3, p. 21).

## IV. ANALYSIS

Ms. Poole argues that she is entitled to relief from the ALJ's decision because the ALJ failed to consider her obesity consistent with SSR 02-01p and because the ALJ did not properly evaluate a mental health source statement that

5

treating psychiatrist Dr. James Barnett completed on February 20, 2015. The Court considers each argument in turn.

### A. The ALJ Properly Considered Ms. Poole's Obesity.

An ALJ must consider a claimant's obesity when evaluating disability. *See* SSR 02-01p, 2002 WL 34686281 at *1 ("[W]e consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability."). SSR 02-01p provides:

> Because there is no listing for obesity, we will find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders.

SSR 02-01p, 2002 WL 34686281 at *5.

In this case, the ALJ reviewed Ms. Poole's treatment notes which indicate that her body mass index or BMI was 39.18 on June 5, 2012; 41.57 on January 21, 2013; and 40.27 on June 4, 2013. (Doc. 6-3, p. 18; *see* Doc. 6-3, pp. 22, 26, 35). Based on these records, the ALJ concluded that Ms. Poole is obese and that Ms.

Poole's obesity is a severe impairment. (Doc. 6-3, pp. 15, 18).[2] The ALJ also explained:

> There are no listing criteria in Appendix 1 specific to the evaluation of obesity impairments, and [Ms. Poole's] obesity is not attended with the specific clinical signs and diagnostic findings required to meet or equal the requirements set forth in the listings founds in any musculoskeletal, respiratory, or cardiovascular body system listing affected by obesity (*See* SSR 02-01p). In accordance with SSR 02-01p, the undersigned has considered [Ms. Poole's] obesity in the residual functional capacity assessment below.

(Doc. 6-3, p. 16). This finding satisfies the ALJ's duty to examine Ms. Poole's obesity. *See Castel v. Comm'r of Social Sec.*, 355 Fed. Appx. 260, 264 (11th Cir. 2009) (the ALJ adequately considered the claimant's obesity because the "ALJ made specific reference to SSR 02–1p in his ruling," the "ALJ determined that [the claimant's] obesity was a severe impairment," and "the ALJ's decision reflects that [the claimant's] obesity was ultimately determined not to result in any specific functional limitations.").[3]

---

[2] An adult is obese if her BMI is 30 or higher. *See* SSR 02-1p, 2002 WL 34686281 at *2.

[3] Like the record in *Castel*, the evidence in this case demonstrates that Ms. Poole weighed just under and just over 200 pounds both before and after she last worked in 2008. (*See* Doc. 6-7, p. 15; Doc. 6-9, pp. 39, 42, 48, 58). Ms. Poole's "ability to perform her work duties at her current weight supports the ALJ's finding that obesity did not substantially affect her functional capacity." *See Castel*, 355 Fed. Appx. at 264 n.9.

7

Ms. Poole contends that the ALJ's evaluation of her obesity is inadequate because the ALJ did not consider "whether [her] obesity is attended with the specific clinical signs and diagnostic findings required to meet or equal the requirements set forth in the listings for diabetic peripheral and sensory neuropathies," specifically Listing 11.14. (Doc. 11, p. 12). The Court disagrees.

Listing 11.14 concerns peripheral neuropathy. The ALJ did not specifically discuss Listing 11.14, but the ALJ's examination of the record demonstrates that the ALJ implicitly found that Ms. Poole does not meet or equal Listing 11.14. *See Flemming v. Comm'r of Soc. Sec. Admin.*, 635 Fed. Appx. 673, 676 (11th Cir. 2015) ("While the ALJ is required to consider the Listing of Impairments in making a decision at step three, we do not require an ALJ to 'mechanically recite' the evidence or listings []he has considered. . . . Therefore, in the absence of an explicit determination, we may infer from the record that the ALJ implicitly considered and found that a claimant's disability did not meet a listing.") (quoting *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986)).

When the ALJ issued his decision on April 30, 2015, Listing 11.14 required a claimant to show that she experienced peripheral neuropathies "[w]ith disorganization of motor function as described in 11.04B, in spite of prescribed treatment." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.14 (effective January 2, 2015 to May 17, 2015). Section 11.04B requires "[s]ignificant and persistent

disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.04B (effective January 2, 2015 to May 17, 2015). Section 11.00C defines "persistent disorganization of motor function" as:

> paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00C (effective January 2, 2015 to May 17, 2015).

Ms. Poole cites her hearing testimony and her subjective complaints to support her argument that she meets Listing 11.14 (*see* Doc. 11, p. 13), but the objective medical evidence does not demonstrate that on or before December 31, 2013, Ms. Poole had significant and persistent disorganization of motor function in two extremities which resulted in sustained disturbance of gross and dexterous movements or gait and station.

As the ALJ noted, on a number of occasions in 2012 and 2013, doctors described Ms. Poole's peripheral neuropathy as "mild." (Doc. 6-3, p. 18; Doc. 6-8, pp. 23, 31, 41). During part of 2012 and in early 2013, Ms. Poole's neuropathy

9

had improved. (Doc. 6-8, pp. 27, 36). On June 4, 2013, Dr. Lianke Mu stated that Ms. Poole's neuropathy was "not well controlled." (Doc. 6-8, p. 23). But Dr. Mu noted that Ms. Poole "absolutely won't accept any kind of injection." (Doc. 6-8, p. 23).[4] Ms. Poole told Dr. Mu that she prefers oral medication. Dr. Mu explained that Ms. Poole's insurance plan limited her oral medication options. (Doc. 6-8, p. 23).[5] By September 10, 2013, Dr. Mu found that Ms. Poole's neuropathy was "much better." (Doc. 6-12, p. 37).

During office visits with Dr. Mu on March 5, 2012; June 5, 2012; September 24, 2012; January 21, 2013; June 4, 2013; and September 10, 2013, Ms. Poole denied joint complaints, muscle weakness, and muscle pain, and musculoskeletal examinations showed no edema and good peripheral pulse. In addition, bilateral feet examinations were not remarkable. (Doc. 6-8, pp. 22, 26, 30, 35, 40; Doc. 6-12, pp. 36-37). Neurological examinations showed that Ms. Poole's ankles had mildly decreased vibration sensation, but Ms. Poole's cranial nerves were intact, and she had normal bilateral deep tendon reflexes and muscle strength. (Doc. 6-8,

---

[4] Ms. Poole contends that she "is financially unable to pay for any type of injection for her diabetes." (Doc. 11, p. 11). The medical evidence does not support this assertion. During at least three visits with Dr. Mu, Ms. Poole stated that she did not want to try injections and would not agree to injection therapy. (Doc. 6-8, pp. 23, 36, 41). The record does not suggest that Ms. Poole could not afford injections. Instead, the record reflects that Ms. Poole did not want that treatment method.

[5] Although Ms. Poole's insurance did not cover certain medication, Dr. Mu found alternative medications to treat Ms. Poole's neuropathy, including DPP4 inhibitors, Invokana, Metformin, Onglyza, and Actos. (Doc. 6-8, p. 23; Doc. 6-12, pp. 37-38).

pp. 22, 26, 30, 35, 40; Doc. 6-12, pp. 36-37). Neurological examinations with other providers between 2006 and 2013 also were normal. (Doc. 6-9, pp. 39, 42, 45, 48, 52, 55, 58, 65, 66, 73, 79, 82, 88, 93). Accordingly, the medical evidence does not support Ms. Poole's argument that her combined impairments, including her obesity, meet Listing 11.14.

    **B.**    **Substantial Evidence Supports the ALJ's Decision to Give Dr. Barnett's Opinion Little Weight.**

An ALJ must give the opinion of a treating physician like Dr. Barnett "substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (citations omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1240-41*; see also Crawford*, 363 F.3d at 1159 (noting a treating physician's report may be discounted if it is wholly conclusory or not supported by objective medical evidence). "The ALJ must clearly articulate the reasons for giving less weight to a treating physician's opinion, and the failure to do so constitutes error." *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 931 (11th Cir. 2013) (citing *Lewis v. Callahan*, 125 F. 2d 1436, 1440 (11th Cir. 1997)).

On February 20, 2015, Dr. Barnett completed on Ms. Poole's behalf a mental health source statement. (Doc. 6-12, pp. 55-56). Dr. Barnett opined that

11

Ms. Poole has marked limitations in the ability to understand, remember, and carry out very short and simple instructions; the ability to make simple work-related decisions; the ability to interact appropriately with the general public; the ability to ask simple questions or request assistance; and the ability to be aware of normal hazards and take appropriate precautions. (Doc. 6-12, pp. 55-56). Dr. Barnett opined that Ms. Poole has extreme limitations in the ability to remember locations and work-like procedures; the ability to understand, remember, and carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to sustain an ordinary routine without special supervision; the ability to work in work in coordination or proximity to others without being distracted by them; the ability to complete a normal workday and workweek without interruptions; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; the ability to respond appropriately to changes in the work setting; the ability to travel in unfamiliar places and use public transportation; and the ability to set realistic goals or make plans independently of others. (Doc. 6-12, pp. 55-56).

The ALJ gave little weight to Dr. Barnett's February 20, 2015 opinion "because it is over a year after [Ms. Poole's] date last insured and provides little probative value for the time period at issue." (Doc. 6-3, p. 20). The ALJ also stated that Dr. Barnett's opinion "is not consistent with the treatment records from the period at issue." (Doc. 6-3, p. 20). Substantial evidence supports the ALJ's treatment of Dr. Barnett's opinion.

The ALJ did not err in giving little weight to Dr. Barnett's opinion because it post-dates Ms. Poole's date last insured by nearly 14 months. *See Caces v. Comm'r, Soc. Sec. Admin.*, 560 Fed. Appx 936, 940 (11th Cir. 2014) (ALJ appropriately gave little weight to medical evidence from a doctor who treated the claimant "long after his date of last insured ha[d] passed"); *Hughes v. Comm'r of Soc. Sec. Admin.*, 486 Fed. Appx. 11, 14 (11th Cir. 2012) (treating physician's opinions that were not based on claimant's mental and physical condition as those conditions existed before the date last insured "were not particularly relevant to whether [the claimant] was disabled for purposes of DIB").

An ALJ must give deference to a retrospective diagnosis if the opinion is "corroborated by evidence contemporaneous with the relevant period." *Wright v. Colvin*, 2015 WL 526806, *10 (11th Cir. Feb. 9, 2015) (citing *Mason v. Comm'r of Soc. Sec.*, 430 Fed. Appx. 830, 832 (11th Cir. 2011)). A retrospective diagnosis is "a physician's post-insured-date opinion that the claimant suffered a disabling

condition prior to the insured date." *Mason*, 430 Fed. Appx. at 832. In his February 20, 2015 mental health source statement, Dr. Barnett does not state that his findings concern Ms. Poole's mental condition on before December 31, 2013. Therefore, the mental health source statement is not a retrospective diagnosis. Even if Dr. Barnett's February 20, 2015 mental health source statement were a retrospective diagnosis, the ALJ owed no deference to the opinion because there is no "corroborating medical evidence that [Ms. Poole] suffered from a disability during the relevant disability period." *See Mason*, 430 Fed. Appx. at 832.

As the ALJ noted, Dr. Barnett's opinion is inconsistent with contemporaneous treatment notes from the relevant period which indicate that Ms. Poole was oriented to person, place, and time; had good insight, judgment, energy, and motivation; had logical thought processes; and had normal sleep patterns. (Doc. 6-3, pp. 19-20; Doc. 6-9, pp. 97, 99; Doc. 6-10, pp. 15, 95). Dr. Barnett's opinion also is inconsistent with Dr. Jack Bentley's September 25, 2013 consultative examination. (Doc. 6-10, pp. 65-68). Dr. Bentley opined that Ms. Poole's "impairment level for complex or repetitive tasks would fall in the moderate range," and her "impairment level for simple tasks" and her "ability to communicate effectively with co-workers and supervisors" would fall in the mild range. (Doc. 6-10, p. 67).

Accordingly, substantial evidence supports the ALJ's decision to give little weight to Dr. Barnett's opinion. *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 Fed. Appx. 862 (11th Cir. 2012) (substantial evidence supported the ALJ's decision to give less weight to a treating physician's opinion when the doctor's opinion was "inconsistent with the medical evidence on record and was not supported by any treatment notes or by an analysis of any test results"); *Roth v. Astrue*, 249 Fed. Appx. 167, 168 (11th Cir. 2007) (finding that substantial evidence supported the ALJ's determination that the treating physician's opinion "should not be assigned substantial weight because it was inconsistent with the record as a whole").[6]

---

[6] The ALJ reviewed medical records regarding Ms. Poole's admission to Mountain View Hospital in 2011 for treatment of major depressive order and Ms. Poole's hospitalization in December 2013 for a brief psychotic disorder possibly due to Tamiflu. (Doc. 6-3, p. 19). With respect to Ms. Poole's week-long August 2011 hospitalization, doctors stabilized Ms. Poole's mood with medication and individual and group therapy. (Doc. 6-9, p. 103). At discharge, Ms. Poole's condition was "much improved," and doctors recommended outpatient treatment. (Doc. 6-9, p. 103). In December 2013, Ms. Poole spent 48 hours in the hospital for a depressive episode. (Doc. 6-11, pp. 38-44). At admission, Ms. Poole "had prominent psychomotor retardations" and "appeared to be almost catatonic." (Doc. 6-11, p. 12). Ms. Poole also expressed "some vague suicidal ideation." (Doc. 6-11, p. 13). At discharge, Ms. Poole had "a much improved mood" and a "brightened affect." (Doc. 6-11, p. 13). Doctors explained that Ms. Poole's "decompensation was resolving quickly." (Doc. 6-11, p. 13). Doctors diagnosed Ms. Poole with a "[b]rief psychotic disorder possibly due to Tamiflu." (Doc. 6-11, p. 14). Although these limited medical records tend to support Dr. Barnett's opinion, based on the applicable legal standard, the Court must accept the weight that the ALJ assigned to Dr. Barnett's opinion. *See Lawton v. Comm'r of Soc. Sec.*, 431 Fed. Appx. 830, 833 (11th Cir. 2011) ("While the record does contain some evidence that is contrary to the ALJ's determination, we are not permitted to reweigh the importance attributed to the medical evidence."). Ms. Poole's 2011 and 2013 hospitalizations appear to be outliers when compared to her general mental health treatment history which, as explained above, reflects that Ms. Poole functioned reasonably well with medication maintenance.

Ms. Poole contends that if the ALJ had questions about whether Dr. Barnett's report was too remote in time, then the ALJ should have re-contacted Dr. Barnett for clarification. (Doc. 11, p. 14). The regulations that were in effect when the ALJ issued his decision permitted, but did not require, an ALJ to seek clarification from a medical source. The relevant regulation states:

> If the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency. The action(s) we take will depend on the nature of the inconsistency or insufficiency. We will try to resolve the inconsistency or insufficiency by taking any one or more of the actions listed in paragraphs (c)(1) through (c)(4) of this section. We might not take all of the actions listed below. We will consider any additional evidence we receive together with the evidence we already have.
>
> (1) We may recontact your treating physician, psychologist, or other medical source. We may choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence. If we obtain medical evidence over the telephone, we will send the telephone report to the source for review, signature, and return;
>
> . . .

20 C.F.R. §§ 404.1520b(c)(1) and 416.920b(c)(1) (effective March 26, 2012 until March 27, 2017). The regulations require an ALJ to re-contact a treating source only if the record is insufficient for the ALJ to make a disability determination. In this case, the ALJ did not have to re-contact Dr. Barnett because, as explained

16

above, even if Dr. Barnett's February 20, 2015 mental health source statement concerns Ms. Poole's condition during the relevant period, sufficient evidence existed in the record for the ALJ to make a disability determination.

Finally, Ms. Poole argues that substantial evidence does not support the ALJ's decision because when her attorney asked the vocational expert a hypothetical that included the limitations that Dr. Barnett identified, the vocational expert testified that Ms. Poole would be unable to work. (Doc. 11, p. 15). For the testimony of a vocational expert "to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). An ALJ is not required to "include findings in the hypothetical that the ALJ [has] properly rejected as unsupported." *Crawford*, 363 F.3d at 1161. As discussed above, substantial evidence supports the ALJ's decision to give little weight to Dr. Barnett's proposed limitations. Therefore, the ALJ did not err by failing to incorporate the limitations into his RFC determination. *See Crawford*, 363 F.3d at 1161.

V. **CONCLUSION**

For the reasons discussed above, the Court finds that substantial evidence supports the ALJ's decision, and the ALJ applied proper legal standards. The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Accordingly, the Court affirms the Commissioner's decision. The

Court will enter a separate final judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this December 26, 2017.

_/s/ Madeline H. Haikala_
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE